UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEWTON BROWN, LLC.,

                  Plaintiff,

-against-

DURAMAX HOLDINGS, LLC d/b/a
OTTO ENVIRONMENTAL SYSTEMS,
BRIAN COLL, SHAWN McNEIL, SHAWN
WHITEMAN, and TRAVIS DOWELL,

                  Defendants.

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 3/27/2026 |

25 Civ. 1075 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Newton Brown, LLC, brings this action against Defendants, Duramax Holdings, LLC d/b/a Otto Environmental Systems ("Duramax"), Brian Coll, Shawn McNeil, Shawn Whiteman, and Travis Dowell, alleging breach of contract, fraud, unjust enrichment, quantum meruit, and implied breach of contract. *See generally* Third Am. Compl. ("TAC"), ECF No. 21. Defendants Brian Coll, Shawn McNeil, Shawn Whiteman, and Travis Dowell (the "Duramax Employees") move to dismiss for lack of personal jurisdiction, and all Defendants move to dismiss for failure to state a claim upon which relief may be granted. *See* Mot., ECF No. 29; Opp., ECF No. 34; Reply, ECF No. 35. For the reasons stated below, the motion is granted.

**BACKGROUND**[1]

In October 2023, the parties attended a videoconference "sponsored" by the New York City Department of Sanitation (the "Sanitation Department") as part of a solicitation for proposals to get trash bags off New York City streets. TAC ¶¶ 19–20. After the conference, Plaintiff alleges that the parties reached an oral agreement to work together to submit a bid to the Sanitation Department. *Id.*

---

[1] The following facts are taken from the third amended complaint, which the Court must accept as true for the purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

¶¶ 21–23.  In November 2023, Plaintiff and Dowell, Duramax's Vice President of Sales, met to discuss their strategy.  *Id.* ¶¶ 17, 24.  Later that month, Plaintiff traveled to Duramax's offices in North Carolina for a meeting about their work on the bid, during which time Dowell orally confirmed Duramax's collaboration with Plaintiff.  *Id.* ¶ 24.  On or about January 18, 2024, Dowell and Plaintiff delivered Duramax's proposal to the Sanitation Department.  *Id.* ¶ 26.  The proposal noted that Duramax "pioneered the plastic 2-wheeled cart introduced in Europe in 1965" and that it was "proud to offer this innovative waste collection technology as the 'NYC Bin.'"  TAC Ex. A at 2, ECF No. 21-1.  The proposal also stated that Duramax was "aligned with" Plaintiff "to ensure a successful deployment of the NYC Bins."  *Id.*

Later, in January and early February 2024, Plaintiff traveled to North Carolina to view the first sample of the NYC Bin that Duramax prepared in its factory and to attend a dinner "for a meeting of the minds and oral acknowledgement of collaboration and the need for agreement."  TAC ¶¶ 28, 30.  During the dinner, Coll, Duramax's CEO, told Plaintiff not to "undervalue [its] contribution," that Duramax was "pleased to have Plaintiff as part of the purported team to get th[e bid] awarded, and that he would reward Plaintiff if and when" Duramax "won the [bid]."  *Id.* ¶ 30.  On February 29, 2024, Duramax and Plaintiff entered into a Mutual Non-Disclosure Agreement (the "NDA"), such that the parties could share "Confidential Information," subject to certain rights and obligations.  *Id.* ¶ 38; TAC Ex. C at 2–3, ECF No. 21-3 (non-disclosure agreement).  Plaintiff continued to negotiate a "proposal" with Duramax for a "solid foundation for their collaboration," and on March 27, 2024, Whiteman, Duramax's Executive Vice President, "confirmed again to [] Plaintiff the need for an agreement in writing as a priority."  TAC ¶¶ 16, 39, 44.  On April 9, 2024, Duramax emailed Plaintiff asking it to provide a title for its role in the proposal, and Plaintiff stated that it should be called a "Senior Advisor" to describe the work Plaintiff "provided in the creation and delivery of the" bid.  *Id.* ¶ 48.

2

On May 31, 2024, the Sanitation Department communicated its decision to award a "Concession License" contract to Duramax, with a "registered contract amount" of one dollar. TAC ¶ 50; TAC Ex. E at 2, ECF No. 21-5. In June 2024, New York City held a press conference to publicly announce the award, and during the conference, Plaintiff's representative, Antonius Agelink, took a picture with the Mayor "regarding the awarding of the" bid. TAC ¶ 51. In July 2024, Plaintiff received an email from Whiteman stating that Duramax was "withdrawing Plaintiff . . . from all business in New York." TAC ¶ 55. The email stated that a New York City commissioner "was extremely upset regarding some request to take pictures with the mayor" and that because of the "turbulence this caused," Duramax could "no longer explore th[e] option" of having a relationship with Plaintiff. TAC Ex. G at 2, ECF No. 21-7.

On November 1, 2024, Plaintiff filed this action against Defendants in Supreme Court, New York County, asserting claims of breach of contract, fraud, unjust enrichment, and breach of implied contract, and seeking the remedies of specific performance and quantum meruit damages. *See* State Am. Compl., ECF No. 1-4. On February 6, 2025, Defendants removed this action to this Court, arguing that removal was proper on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. *See* Notice of Removal ("NOR"), ECF No. 1. Plaintiff subsequently further amended its complaint twice, removing its specific performance claim and proceeding on all other claims and requests for relief. *See* Second Am. Compl., ECF No. 14; TAC.

## DISCUSSION

I. Personal Jurisdiction

Duramax Employees move to dismiss the TAC for lack of personal jurisdiction because they do not reside in New York, and the vast majority of their alleged activities were done outside of New York and were done in the scope of their employment with and for the benefit of Duramax. Mot.

3

at 1, 8–11.  Plaintiff argues that this Court has personal jurisdiction over the Duramax Employees under New York's long-arm statute, CPLR § 302(a)(1).  Opp. at 3–5.

### A.  Legal Standard

For a federal court to exercise personal jurisdiction, the Court (1) "must have a statutory basis for asserting personal jurisdiction over each defendant, based on the long-arm statute of the state in which it sits"; and (2) if the long-arm statutory basis exists, personal jurisdiction "must be consistent with federal due process requirements."  *Beskrone v. Berlin*, 656 F.Supp.3d 496, 506 (S.D.N.Y. 2023) (cleaned up).  Where, as here, there has not been a "full-blown evidentiary hearing," the plaintiff bears the burden of establishing a prima facie showing that personal jurisdiction exists by making "allegations establishing jurisdiction with some factual specificity," and such a showing cannot be made "through conclusory assertions alone."  *Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 395–96 (S.D.N.Y. 2021) (citations and internal quotation marks omitted).  The plaintiff must make this showing for each defendant and claim individually.  *See id.* at 396.  "Courts may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction."  *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 630 (S.D.N.Y. 2017) (citations and internal quotation marks omitted).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," but if the parties' affidavits create conflicts, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Id.* (citations omitted).  "[R]emoval to federal court does not waive a defendant's right to move for dismissal based on the absence of personal jurisdiction."  *PT United Can Co. v. Crown Cork & Seal Co.*, No. 96 Civ. 3669, 1997 WL 31194, at *4 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65 (2d Cir. 1998).

B.  Application

The parties do not dispute that all Duramax employees are non-New York residents.  *See* Mot. at 8–9; Opp. at 3–4.  New York's long-arm statute provides both general and specific personal jurisdiction over out-of-state defendants.  New York Civil Practice Law and Rules ("C.P.L.R.") § 301 confers general personal jurisdiction, which "may arise from a foreign defendant's overall course of business in the state," and is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Beskrone*, 656 F. Supp. 3d at 506.  C.P.L.R. § 302 provides for specific personal jurisdiction over out-of-state defendants based on those defendants' contacts with New York in connection with the cause of action.  *See id.*; C.P.L.R. § 302.  The statute allows the Court to exercise personal jurisdiction over a non-resident defendant who:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state; or (3) commits a tortious act without the state causing injury to person or property within the state; or (4) owns, uses or possesses any real property situated within the state.

*Wohlbach v. Ziady*, No. 17 Civ. 5790, 2018 WL 3611928, at *2 (S.D.N.Y. July 27, 2018) (quoting C.P.L.R. § 302(a)).

New York courts have described § 302 as a "single act statute," meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Renren, Inc. v. XXX*, 67 Misc. 3d 1219(A), 2020 WL 2564684 at *10 (N.Y. Sup. May 20, 2020), *aff'd sub nom. Matter of Renren, Inc.*, 192 A.D.3d 539 (2021).

1.  General Personal Jurisdiction

With respect to general jurisdiction, "New York courts have concluded that [because] CPLR

5

[§] 301 applies to persons acting only in their individual capacities, . . . their activities on behalf of an employer or corporation will not support the exercise of personal jurisdiction." *Beskrone*, 656 F. Supp. 3d at 509 (citation and internal quotation marks omitted). C.P.L.R. § 301, therefore, requires that an individual have done "business in any individual capacity in New York." *Id.* Plaintiff's claims with respect to each Duramax Employee concern the Employees' acts taken "on behalf of," as a "representative" or "representatives" of, and otherwise "for" Duramax. *See* TAC ¶¶ 18, 22, 23, 43, 52, 53, 67, 72. The affidavits submitted by Defendants in support of their motion do not contradict Plaintiff's claims and further support that the Duramax Employees acted on behalf of Duramax for the acts described in the TAC. *See* Dowell Decl. ¶21, ECF No. 29-1; McNeil Decl. ¶19, ECF No. 29-2; Whiteman Decl. ¶19, ECF No. 29-3. Plaintiff also does not argue that general personal jurisdiction exists over the Duramax Employees. *See* Opp. at 3–5. Therefore, Plaintiff has not made a showing that the Court has general personal jurisdiction over the Duramax Employees.

2. Specific Personal Jurisdiction

With respect to specific personal jurisdiction, Plaintiff does not allege any tort claims, nor does Plaintiff allege that the Duramax Employees own, use, or possess any real property situated in New York. *See generally* TAC. The Court, therefore, analyzes whether specific personal jurisdiction exists with respect to the first element of C.P.L.R. § 302(a)—that is, whether the Duramax Employees "transact[] any business within the state or contract[] anywhere to supply goods or services in the state" and whether Plaintiff's claims arise from that business or those contracts. C.P.L.R. § 302(a)(1).

"Courts in this circuit have explained that § 302(a)(1) has two prongs: (1) the defendant must have transacted business within the state, either itself or through an agent, and (2) the cause of action must arise from that business activity." *Shi v. Le*, No. 21 Civ. 1361, 2022 WL 896963, at *2 (E.D.N.Y. Mar. 28, 2022) (citation omitted). Under the first prong, the Court will look to "the totality of the defendant's activities within the forum" to determine whether the defendant has "purposefully avail[ed]

6

[him]self of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citations and internal quotation marks omitted).  Under the second prong, "a plaintiff must show that there is a substantial relationship or articulable nexus between the claim asserted and the actions taken in New York." *Shi*, 2022 WL 896963, at *2 (citations and internal quotation marks omitted).

First, considering the totality of each Duramax Employee's activities in New York, Plaintiff alleges that the Duramax Employees "solicited business within the state of New York," TAC ¶ 18, and had "substantial New York directed communications . . . with Plaintiff in New York regarding the performance and implementation of a New York City bid and contract," Opp. at 3–4.  Such "group pleading," however, fails to sufficiently establish jurisdiction with respect to each employee.  *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967, 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021).  Further, although Duramax engaged in at least one transaction in New York, that is, the bid to the Department of Sanitation, courts in this Circuit have consistently held that "[j]urisdiction over a corporation . . . member, officer or employee, who is sued in his individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his official capacity." *In re Terrorists Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 506 (S.D.N.Y. 2010), *aff'd*, 714 F.3d 118 (2d Cir. 2013); *see also Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008) ("[A]n individual defendant may be subject to specific personal jurisdiction (but not general jurisdiction) based on his actions in his corporate capacity only where the plaintiff can show that the corporation was acting as the agent of the officer (rather than vice versa, as would usually be the case).").  As stated above, Plaintiff's allegations with respect to each Duramax Employee concern actions taken on behalf of Duramax or otherwise within their capacity as employees.  *See* TAC ¶¶ 18, 22, 23, 43, 52, 53, 67, 72.

Plaintiff's argument that personal jurisdiction should extend to Dowell because he was

Duramax's "principal representative" in the conduct giving rise to Plaintiff's claim fails. *See* Opp. at 3.
Plaintiff does not allege any details demonstrating that Duramax was an agent of Dowell, or any of the
Duramax Employees. *See generally* TAC; *see also Duravest,* 581 F. Supp. 2d at 634. Neither does
Plaintiff allege with any detail that Dowell was a "primary actor" in the transaction such that he
exercised a degree of control over Duramax with respect to the bid. *See Renren*, 2020 WL 2564684,
at *17 ("Where a corporation engages in purposeful activities within New York with respect to the
subject transaction with the knowledge and consent of the defendant, the court has personal jurisdiction
over the defendant by virtue of the corporation's activities where the defendant benefited from the
transaction and exercised some degree of control over the corporation in relation to the
transaction. . . . To satisfy the element of control, the plaintiff must allege in sufficient detail that the
defendant was a primary actor in the subject transaction." (citing *Retail Software Servs., Inc. v. Lashlee*,
854 F.2d 18, 21–22 (2d Cir. 1988) and *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 487
(2017)).

Plaintiff has not made a prima facie showing that either general or specific personal jurisdiction
exists with respect to each claim asserted against each Duramax Employee.[2] Accordingly, the claims
against the Duramax Employees are dismissed without prejudice.

II. Failure to State a Claim

All Defendants move to dismiss for failure to state a claim upon which relief can be granted.
*See* Mot. at 11–16; *see also* Opp. 5–7. Because the Court has already determined that personal
jurisdiction does not exist with respect to the Duramax Employees, the Court considers only
Plaintiff's claims against Duramax.

---

[2] Because the Court concludes that Plaintiff has not established that New York's long arm statute confers personal
jurisdiction over the Duramax Employees, it need not address the due process analysis. *See Penguin Grp. (USA) Inc.* v.
*Am. Buddha*, 609 F.3d 30, 41 (2d Cir. 2010).

A. Legal Standard

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss brought under Rule 12(b)(6), the Court draws all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

B. Application

1. Breach of Contract

To bring a breach of contract claim under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Empower Energies, Inc. v. SolarBlue, LLC*, No. 16 Civ. 3220, 2016 WL 5338555, at *10 (S.D.N.Y. Sept. 23, 2016) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Plaintiff fails to allege the existence of an agreement. Plaintiff claims that it reached an "oral contract" with Duramax regarding work on the bid to the Sanitation Department. TAC ¶¶ 23–24, 46, 68–69. Plaintiff alleges that the parties at various points agreed that they needed to "reduce their agreement to writing," or otherwise that there was a "need for agreement." TAC

9

¶¶ 26, 30, 44, 46, 52. But the TAC does not articulate the terms of any agreement. Instead, it states that the parties had "agreed the oral contract was to be memorialized in writing at a proper date and time to be signed by the parties," *id.* ¶ 68, that the parties "reached an oral agreement to work on [the bid]," *id.* ¶ 23, that the parties met to "acknowledge[] . . . [their] collaboration" and discuss "the need for agreement," *id.* ¶ 30, and that the Defendant "confirmed that an agreement would be sent to the Plaintiff," *id.* ¶ 46.[3] This is nothing more than an agreement to agree, which is unenforceable under New York Law. *See Danton Const. Corp. v. Bonner*, 571 N.Y.S.2d 299, 300 (N.Y. App. Div. 1991) ("[A]n 'agreement to agree', which leaves material terms of a proposed contract for future negotiation, is unenforceable.").[4]

### 2. Implied Breach of Contract, Unjust Enrichment, and Quantum Meruit

"[U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract 'to prevent one person who has obtained a benefit from another . . . from unjustly enriching himself at the other party's expense.'" *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997) (quoting *Chadirjian v. Kanian*, 506 N.Y.S.2d 880, 882 (App. Div. 1986)), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "The Court analyzes quantum meruit and unjust enrichment together as a single quasi contract claim." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 460 (S.D.N.Y. 2021) (cleaned

---

[3] For the first time in the affidavits submitted in opposition to Defendants' motion, Plaintiff suggests that the parties had reached an agreement on "all material terms regarding the collaboration" and the "relevant terms and understandings regarding the collaboration are reflected across multiple writings and communications" between the parties. *See* Agelink Decl. ¶¶ 10–11, ECF No. 34-1. The Court "cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Regan v. Village of Pelham*, No. 19 Civ. 7987, 2021 WL 1063320, at *4 (S.D.N.Y. Mar. 19, 2021) (quoting *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018)). And even if the Court were to accept the statements made in the Agelink declaration, they still fail to allege the existence of a contract: the declaration merely states that Agelink, as Plaintiff's chief executive officer, "*understood* from [the parties'] exchanges that all material terms regarding the collaboration," Agelink Decl. ¶¶ 1, 10 (emphasis added), but a contract requires mutual manifestation of assent among the parties, not a one-sided understanding. *See Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 298–99 (2024).

[4] Because the Court has already concluded that Plaintiff has failed to state a breach of contract claim, it need not consider Defendants' argument that the claim also is barred by the statute of frauds. *Tal v. Computech Int'l, Inc.*, No. 21 Civ. 5773, 2022 WL 18135290, at *4 n.2 (E.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 112804 (E.D.N.Y. Jan. 5, 2023).

up).  New York's statute of frauds bars oral agreements, including contracts implied in fact or in law, to pay compensation "for services rendered in negotiating a 'business opportunity,' unless there is some note or memorandum in writing, subscribed by the party to be charged therewith."  *Hopwood v. Infinity Contracting Servs. Corp.*, 217 N.Y.S.3d 586, 588 (App. Div. 2024) (citations and quotation marks omitted); *see also* N.Y. General Obligations Law § 5-701(a)(10).

Accepting Plaintiff's allegations as true and drawing all inferences in its favor, Plaintiff's claims amount, at best, to an oral agreement to pay compensation to negotiate a business opportunity, which is an agreement that is barred by the statute of frauds.  Plaintiff alleges that the Duramax breached their oral agreement to "work on" the bid for the Department of Sanitation "by refusing (after the [bid] was awarded) to pay [P]laintiff[] or to further recognize [its] participation in the creation and awarding of the [bid]."  TAC ¶ 69; *see also id.* ¶ 60 (claiming that Duramax stated that it was going to grant Plaintiff "great compensation and additional work opportunity if" Duramax "were to be awarded" the bid); *id.* ¶ 71 ("[T]he defendants failed to compensate the plaintiff after they successfully obtained the [bid].").

Plaintiff also fails to allege the elements of its quantum meruit and unjust enrichment claims.  "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Cambridge Cap.*, 565 F. Supp. 3d at 460 (citation and internal quotation marks omitted).  "[T]o prevail on a claim for unjust enrichment under New York law, a plaintiff must demonstrate (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Id.* (citations and quotation marks omitted).

First, the claims fail because work done in preparation for a contract cannot be compensated under New York law.  *See Rogers v. HSN Direct Joint Venture*, No. 97 Civ. 7710, 1999 WL 595533, at \*2 (S.D.N.Y. Aug. 6, 1999) ("Money expended in preparation for eventually performing under an agreement is not compensable in quasi-contract."); *see also Hudson & Broad, Inc. v. J.C. Penney Corp.*, No. 12 Civ. 3239, 2013 WL 3203742, at \*5–6 (S.D.N.Y. June 18, 2013), *aff'd*, 553 F. App'x 37 (2d Cir. 2014).

Second, the allegations in the TAC do not support Plaintiff's claim that it could have reasonably expected compensation for the value of any services or information provided to Duramax, nor do they plausibly allege that it would be against equity and good conscience for Duramax to retain the value of the work performed by Plaintiff.  Plaintiff's claim that it is "entitled to the value of the work and contribution to the successful [bid] in proportion and in accordance with the value gained to defendants by the gaining award of the" bid is conclusory and does not show a reasonable expectation of payment.  TAC ¶ 71; *see id.* ¶ 81; *Hudson & Broad*, 2013 WL 3203742, at \*6 ("The mere expectation of compensation by a party is not sufficient to merit recovery. Rather there must be a reasonable expectancy of receiving such compensation." (citations and quotation marks omitted)).  The TAC alleges that the parties recognized "the need and priority . . . to reduce their agreement to writing" but does not specify the terms of such an agreement.  TAC ¶ 26.

Accordingly, Plaintiff fails to state claims for implied breach of contract, unjust enrichment, and quantum meruit.

3.   Fraud

Plaintiff fails to allege a fraud claim against Duramax.  First, Plaintiff's claim that Defendants committed fraud by "representing" that Plaintiff "would be compensated proportionally to the value of the [bid] once awarded" fails.  TAC ¶¶ 74–75.  Plaintiff does not point to any "misrepresentation or material omission of fact which was false and known to be false

by . . . [D]efendant[s], made for the purpose of inducing the [Plaintiff] to rely upon it," and "justifiable reliance" on that statement. *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016). The only discernible misrepresentation from Plaintiff's complaint is Defendants' statements that they intended, at some point, to reduce an agreement to writing. *See* TAC ¶ 26. But Plaintiff does not successfully claim that this was false—in other words, that Defendants knew they never intended to work with or come to an agreement with Plaintiff—nor does Plaintiff plausibly allege that its reliance on these vague promises was reasonable. *See Pasternack*, 27 N.Y.3d at 827; *Rapaport v. Strategic Fin. Sols., LLC*, 140 N.Y.S.3d 508, 509–10 (App. Div. 2021) (finding that a party failed to show justifiable reliance when it failed to adequately plead that it "could not have protected [itself] through due diligence concerning the transaction").

As to Plaintiff's claim for fraud against New York City, "only the defrauded party has standing to assert a fraud claim." *Estate of Kraft v. Kraft*, 198 N.Y.S.3d 124, 126 (App. Div. 2023). Here, Plaintiff alleges that "Defendants committed . . . fraud against the City of New York by falsely claiming to be aligned with a Minority Business Enterprise to gain the award" of the bid. TAC ¶ 77. Accordingly, only New York City, a nonparty, would have standing to sue for fraud.

13

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The case is DISMISSED with prejudice as to Defendant Duramax Holdings, LLC for failure to state a claim upon which relief can be granted,[5] and DISMISSED without prejudice for lack of personal jurisdiction with respect to all other Defendants.  The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 29 and 33.

SO ORDERED.

Dated: March 27, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] The Court finds that granting leave for Plaintiff to file a fourth amended complaint with regard to its claims against Duramax would be futile.  After three amendments, Plaintiff has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 15(a).  Accordingly, the dismissal of this action as to Duramax is with prejudice.